Kaveh S. Elihu, Esq. (SBN 268249)
Colleen M. Mullen, Esq. (SBN 299059)
**EMPLOYEE JUSTICE LEGAL GROUP, P.C.**
1001 Wilshire Blvd.
Los Angeles, California 90017
kelihu@ejlglaw.com
cmullen@ejlglaw.com
Telephone: (213) 382-2222
Facsimile: (213) 382-2230

Attorneys for Plaintiff,
Cynthia Ross, individually and as successor in interest
to Michael Burgers

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA ROSS, individually and as successor in interest to MICHAEL BURGERS, | Case No.: |
| Plaintiff, | **COMPLAINT FOR CIVIL DAMAGES** |
| v. | 1. VIOLATIONS OF CIVIL RIGHTS – 42 U.S.C. § 1983 (First, Eighth, and Fourteenth Amendments) |
| STATE OF CALIFORNIA; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR"); FOLSOM STATE PRISON; RALPH DIAZ, in his individual capacity; ESTATE OF ROBERT STEVEN THARRATT; RICK HILL, in his individual capacity; KAREN BROWN, in his individual capacity; and DOES 1 through 20, and Ronald Burgers (Nominal Defendant); Delia Edwards (Nominal Defendant); Katrina Stingley (Nominal Defendant); Damecia Stingley (Nominal Defendant); | 2. SUPERVISORY LIABILITY – 42 U.S.C. § 1983<br>3. VIOLATION OF THE ADA, 42 U.S.C § 12101<br>4. VIOLATION OF THE BANE ACT, CAL. CIV. CODE § 52.1<br>5. VIOLATION OF THE UNRUH ACT, CAL. CIV. CODE § 51<br>6. NEGLIGENCE<br>7. VIOLATION OF CAL. GOVT. CODE § 845.6<br>8. WRONGFUL DEATH |

Crystal Burgers (Nominal Defendant);
Samuel Stingley (Nominal Defendant);
Nethaniel Stingley (Nominal Defendant);
Howard Stingley (Nominal Defendant),
inclusive,

Defendants

**DEMAND FOR JURY TRIAL**

**COMES NOW PLAINTIFF, CYNTHIA ROSS,** individually and as successor in interest to MICHAEL BURGERS, and alleges as follows:

## <u>INTRODUCTION</u>

"The basic concept underlying the Eighth Amendment is nothing
less than the dignity of man."
-*Trop v. Dulles*, 356 U.S. 86, 100 (1958)

1. This civil rights action seeks damages from Defendants for deliberately or, through gross recklessness or negligence, failing to protect 53-year-old MICHAEL BURGERS, known by Defendants to have multiple serious underlying medical conditions that left him particularly at risk from the devastating COVID-19 virus.

2. Defendants should have protected BURGERS, a vulnerable inmate in their custody, from the known risks of COVID-19. Instead, Defendants made deliberate choices that needlessly exposed BURGERS to COVID-19, which directly resulted in his death. Defendants are liable for this callous, unjustified, and unconstitutional treatment of BURGERS, as well as for the pain and suffering they caused to the family BURGERS left behind.

-1-

COMPLAINT FOR DAMAGES

## JURISDICTIONAL ALLEGATIONS

3.      As this action is brought under 42 U.S.C. § 1983, this Court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

4.      As Plaintiff's claims brought under California state law arise out of the same transactions and occurrences, and out of a common nucleus of operative facts, as Plaintiff's federal question claims, this Court has jurisdiction over Plaintiff's California state law claims under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.      The incidents complained of herein occurred in San Joaquin County, State of California, within the territorial jurisdiction of this court, thus venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## THE PARTIES

6.      Plaintiff CYNTHIA ROSS ("Plaintiff"), hereinafter referred to as Plaintiff, is a natural person, who, at all times relevant herein resided in Long Beach, California. Plaintiff is the sister of decedent MICHAEL BURGERS, hereinafter referred to as "BURGERS." Plaintiff brings this action individually on behalf of herself, and as successor in interest to BURGERS, pursuant to California Code of Civil Procedure sections 377.11, 377.20, *et seq.* and 377.60 *et seq*. The survival and wrongful death claims all survive the death of MICHAEL BURGERS; all arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure section 377.62.

7.      Decedent BURGERS died in San Joaquin, California on September 26, 2020. BURGERS was Plaintiff's brother. BURGERS did not have any children known to Plaintiff.

8.      Defendant STATE OF CALIFORNIA was, all at times relevant to this action, the employer of all individual Defendants in this action, all of whom acted within the course and scope of their employment.

9.      Defendant CALIFORNIA DEPARTMENT OF REHABILITATION ("CDCR") was, at all times relevant to this action, a state agency as defined in California Government Code § 900.6.

10.     Defendant FOLSOM STATE PRISON ("Folsom") was, at all times relevant to this action, a State of California prison under CDCR.

11.     At all material times, Defendant RALPH DIAZ was the State of California Secretary, and the highest policymaking official, of CDCR. On information and belief, he was ultimately responsible for the oversight, management, policies, procedures, provision of services, and supervision of all employees and agents of CDCR, including employees and agents of FOLSOM. DIAZ was responsible for preventing and handling contagious disease outbreaks, such as COVID-19, at FOLSOM. On information and belief, he was personally involved in the decision(s) to send CDCR guards and personnel from FOLSOM during the height of the outbreak at the facility back to FOLSOM – a decision that violated the state-wide orders to shelter in place and ignored the obvious and known dangers of transferring and housing inmates who had been exposed to COVID-19 together with medically-vulnerable inmates. DIAZ was personally responsible for the manner in which the transfer of CDCR personnel between facilities was done and the manner in which officials caused, addressed, or failed to address the COVID-19 outbreak at FOLSOM, which, on information and belief, was the actual and proximate cause of the injuries as alleged herein. At all material times, he was employed by the State of California and acted within the course and scope of that employment.

12.     At all material times, R. STEVEN THARRATT, M.D., was the Medical Director and a policymaking official of CDCR who, on information and belief, was responsible for medical-related oversight, management, decisions, policies, procedures, provision of services, hiring and supervision of CDCR employees and agents, including those in FOLSOM, and for preventing and handling contagious disease outbreaks at FOLSOM. . On information and belief, he was personally involved in the decision(s) to send CDCR guards and personnel from FOLSOM during the height of the outbreak at the facility back to FOLSOM – a decision that violated the state-wide orders to shelter in place and ignored the obvious and known dangers of transferring and housing inmates who had been exposed to COVID-19 together with medically-vulnerable inmates. THARRATT was personally responsible for the

manner in which the transfer of CDCR personnel between facilities was done and the manner in which officials caused, addressed, or failed to address the COVID-19 outbreak at FOLSOM, which, on information and belief, was the actual and proximate cause of the injuries as alleged herein. At all material times, he was employed by the State of California and acted within the course and scope of that employment. On information and belief, R. STEVEN THARRATT is deceased, thus Defendant ESTATE OF R. STEVEN THARRATT is being substituted in.

13.     At all material times, Defendant Warden RICK HILL was the Warden of FOLSOM.  In that capacity, HILL was charged by law with and was responsible for the administration of the CDCR at FOLSOM and the supervision, training, and hiring of persons, agents, and employees of persons working with CDCR. He is the official responsible for setting and enforcing the policies, customs, and practices of the CDCR with respect to FOLSOM. He was ultimately responsible at FOLSOM for the safety and health of all inmates and staff at FOLSOM, and preventing and handling contagious disease outbreaks at FOLSOM. On information and belief, he was personally involved in the decision(s) to send CDCR guards and personnel from FOLSOM during the height of the outbreak at the facility back to FOLSOM – a decision that violated the state-wide orders to shelter in place and ignored the obvious and known dangers of transferring and housing inmates who had been exposed to COVID-19 together with medically-vulnerable inmates. HILL was personally responsible for the manner in which the transfer of CDCR personnel between facilities was done and the manner in which officials caused, addressed, or failed to address the COVID-19 outbreak at FOLSOM, which, on information and belief, was the actual and proximate cause of the injuries as alleged herein. At all material times, he was employed by the State of California and acted within the course and scope of that employment.

14.     At all material times, KAREN BROWN was the Chief Executive Officer for Health Care of FOLSOM. On information and belief, she was a policy-making official concerning medical care and health at FOLSOM, and served as a principal advisor in institution-specific application of healthcare policies and procedures. On information and belief, she was also

-4-

responsible for: planning, organizing, and coordinating the implementation of the healthcare delivery system at FOLSOM; supervising healthcare programs managers responsible for providing adequate healthcare services to medically-vulnerable inmates; ensuring adequate protection and services are provided to disabled inmates; managing the overall healthcare operation; and preventing and handling contagious disease outbreaks at FOLSOM. On information and belief, she was personally involved in the decision(s) to send CDCR guards and personnel from FOLSOM during the height of the outbreak at the facility back to FOLSOM – a decision that violated the state-wide orders to shelter in place and ignored the obvious and known dangers of transferring and housing inmates who had been exposed to COVID-19 together with medically-vulnerable inmates. BROWN was personally responsible for the manner in which the transfer of CDCR personnel between facilities was done and the manner in which officials caused, addressed, or failed to address the COVID-19 outbreak at FOLSOM, which, on information and belief, was the actual and proximate cause of the injuries as alleged herein. At all material times, she was employed by the State of California and acted within the course and scope of that employment.

15. The true names and identities of Defendant Does 1 through 20 are not presently known to Plaintiff. Plaintiff alleges that Defendant Does 1 through 20 were employed by Defendants at the time of the conduct alleged herein. Plaintiff is informed and believes, and on that basis alleges, that each Defendant sued under such fictitious names is in some manner responsible for the wrongs and damages as alleged herein. Plaintiff does not know at this time the true names or capacities of said Doe Defendants, but will seek to amend this Complaint as soon as the true names and identities of Defendant Does 1 through 20 have been ascertained.

16. All individual Defendants are sued in their individual capacities.

17. At all relevant times, each and every Defendant was an agent and/or employee of each and every other Defendant. In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment, and was acting with the consent, permission, and authorization of each remaining Defendant.

All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents.

18.     At all material times, each Defendant acted under color the laws, statutes, ordinances, and regulations of the State of California.

19.     A proper and timely tort claim was presented to the STATE OF CALIFORNIA on behalf of Plaintiff and Decedent, pursuant to California Government Code section 910 *et seq*. and this action was thereafter timely filed within all applicable statutes of limitation.

20.     In committing the acts alleged in this complaint, Defendants acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Plaintiff, justifying an award of punitive damages under federal and California law against each individual Defendant.

## FACTUAL ALLEGATIONS

## The Historical Fight to Provide Access to Medical Care in CDCR

21.     It is well known that, when compared to the general population, incarcerated men and women generally experience worse mental and physical health. In 2005, data from the Bureau of Justice Statistics found that more than half of all prison and jail inmates had mental health problems. Moreover, inmates of both genders are more likely to have blood pressure, asthma, cancer, arthritis, and infectious diseases (such as tuberculosis, hepatitis C, and HIV).

22.     CDCR's struggle in providing adequate medical care to this vulnerable population is well-documented, as it has been the central focus of decades of litigation. In January 2002, CDCR stipulated to a consent order in which the Court imposed a receivership on CDCR to administer and improve prisoner healthcare to resolve a class action lawsuit brought by inmates claiming CDCR was being deliberately indifferent to the serious medical needs of its inmates. In 2005, advocates presented evidence regarding the "incompetence and indifference" of prison medical staff and noted the "abysmal medical deliver system where medical care too often [sunk] below gross negligence to out-right cruelty." *Plata v. Schwarzenegger*, 603 F.3d 1088 (9th Cir. 2010) (internal citations omitted) ("*Plata*

litigation"). Given these findings, the court ordered CDCR medical care system to be placed under the control of a court-appointed procedure. *Id.* In 2009, the court denied the State's motion to terminate the appointment of the Receiver; this order was upheld in the Ninth Circuit in April 2010. *Id.*

23.   Thus, for over twenty years, CDCR has had ample notice of the deficiencies in the way it administers healthcare to the vulnerable inmate population, but has wholly failed to address the underlying issues. CDCR and high-ranking officials knew of the serious harm that resulted from its failure to properly administer medical care to inmates and knew that such failure rose to the level of a constitutional violation.

## CDCR's Inadequate Response to COVID-19

24.   On March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency in California.

25.   On March 11, 2020, The World Health Organization declared COVID-19 a global pandemic, noting "the alarming levels of spread and severity" and the "alarming levels of inaction" in response to the virus.

26.   On information and belief, on March 11, 2020, Defendants STEVEN THARRATT, HILL, and BROWN received a Memorandum from California Correctional Health Care Services warning officials of the highly contagious COVID-19 virus and the necessary precautions that needed to be adopted, including providing PPE for incarcerated persons with signs and symptoms of COVID-19;

27.   On or about March 17, 2020, Defendant RALPH DIAZ issued a statement to CDCR Staff stating: "We must stress to all of you the seriousness of the threat we are facing. As we are watching other countries, states, and cities combat the virus, understand that where they are today could be where we are tomorrow."  Thereafter, all transfers of inmates to California stopped for thirty days.

28.   On or about March 19, 2020, Governor Newsom signed Executive Order N-33-20, directing all Californians to stay home to prevent the spread of the virus.

29.     On March 22, 2020, CDCR issued a statement acknowledging that an inmate at California State prison, Los Angeles County, had tested positive for COVID-19, the first known positive test among CDCR inmates.

30.     On March 23, 2020, the Centers for Disease Control and Prevention published an "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." The publication included specific instructions as to the handling of quarantined individuals that included: housing quarantined individuals in single cells with solid walls (i.e. not bars), housing a cohort of quarantined individuals in a large, well-ventilated cell with solid walls with at least six feet of personal space assigned to each individual in all directions within the larger space, and ensuring quarantined individuals were not permitted any movement outside of the cell.

31.     On March 24, 2020, Governor Newsom issued Executive Order N-36-20, further limiting transfer of inmates, calling for quarantining of inmates first arriving from county jails, and educating staff and inmates regarding safeguards against Covid-19. Thus, Defendants were aware of the dangers and risks associated with transferring inmates and failing to properly quarantine potentially exposed persons.

32.     On March 25, 2020, Defendant RUIZ issued a video message to CDCR employees and general population of inmates in which he states that he is "well aware that the COVID virus didn't begin inside the institution. It came from outside the institution and was brought in. . . That's why I've made the decisions I've made." RUIZ also acknowledged the importance of "cleaning" yourselves, including in all common areas, and isolating those who may be positive from the general population.

33.     On April 2, 2020, Dr. Leah Rorvig, of University of California, San Francisco, issued a training video specific to correctional staff regarding the safety protocols that needed to be adopted to protect against COVID-19. The video included information that the "most common" spread of COVID-19 was through aerosols and droplets from sick persons; the first symptoms of COVID-19 included fever or chills, cough, tiredness, or shortness of breath; older adults (sixty to seventy-nine years old) and those with underlying medical condition

including chronic obstructive pulmonary disease, diabetes, heart disease, and high blood pressure were highly susceptible to "getting seriously ill from COVID-19"; and the importance of social distancing, wearing masks, and washing hands.

34. On April 6, 2020, Defendant THARRATT issued a Memorandum to all CDCR staff regarding the importance of wearing personal protective equipment ("PPE") for staff and inmates.

35. On April 10 and April 12, 2020, the federal receiver responsible for overseeing healthcare directives at CDCR as a result of the *Plata* litigation recommended that CDCR not authorize or undertake any further movement of incarcerated persons between prisons.

36. On April 16, 2020, Defendants were aware that staff and incarcerated persons had to wear face coverings and follow physical distancing.

37. On April 19, 2020, an inmate at CIM died from COVID-19. CIM announced fifty-nine other inmates had tested positive for COVID-19. Shortly thereafter, in May 2020, at least five inmates passed away from COVID-19 as the surge in CIM continued. At this time, CIM was the site of the largest COVID-19 outbreak in a California state prison. Thus, Defendants were aware of how quickly COVID-19 could spread among an inmate population, and the known risk of death that such infections could cause.

38. On May 22, 2020, CDCR issued a Memorandum entitled "COVID-19 Pandemic – Road Map to Reopening Operations." This memorandum recommended, but did not mandate, screening individuals for COVID-19 prior to undertaking any transfer, including transfer of CDCR personnel among facilities. The Memorandum also expanded requirements for face covering and physical distancing.

39. On or about May 28, 2020, CDCR identified individuals from CIM that were considered "high risk for COVID-19 complications" and made the decision to transfer these individuals to San Quentin. Following this transfer, San Quentin experienced a deadly spike of COVID-19 cases throughout the facility. By June of 2020, more than 1,100 inmates at San Quentin had tested positive. Thus, Defendants were aware of the dangerous consequences of transferring personnel, including inmates and guards, between facilities.

40.   On information and belief, CDCR officials, including RUIZ, HILL, and BROWN,  sent approximately 49 officers from FOLSOM to San Quentin during the height of the COIVD-19 outbreak in San Quentin. The FOLSOM personnel worked up to 30 days at San Quentin.

41.   On June 11, 2020, Defendant RUIZ issued a Memorandum to all CDCR staff *relaxing* face covering requirements for staff and, subsequently, incarcerated persons. The Memorandum was circulated relaxing safety protocols despite experiencing a highly dangerous, objectively measureable spike in COVID-19 cases within CDCR facilities;

42.   On July 1, 2020, the California Senate Public Safety Committee convened an informational hearing to assess COVID-19 spread in CDCR facilities. During this hearing, the May 28, 2020, decision to transfer vulnerable, highly-susceptible inmates from CIM to FOLSOM was sharply criticized by California lawmakers. Assembly Member Marc Levine described the decision as "the worst prison health screw-up in state history." Other lawmakers described that decision as a "fiasco" and a "horribly botched transfer" that reflected a "failure of leadership" that was "abhorrent" and "completely avoidable." In response, Defendant DIAZ acknowledged: "We can do better, and I know we will do better." Similarly, another high-ranking CDCR official admitted: "There is no dispute that more could be and should be done." Again, Defendants understood and acknowledged the dangers of transferring personnel between facilities.

43.   On or around July 7, 2020, the district court overseeing the court-ordered receivership of CDCR as a result of *Plata v. Newsom* (previously, *Plata v. Schwarzenegger*), issued multiple orders to ensure CDCR staff received adequate testing and CDCR facilities were setting aside adequate space for isolation and quarantine in the event of an outbreak.

44.   On August 7, 2020,  FOLSOM only had approximately seven active COVID-19 cases. On information and belief, these numbers significantly increased following the return of FOLSOM personnel from SAN QUENTIN.

45.   By August 18, 2020, FOLSOM had 126 inmates who tested positive for COIVD-19. FOLSOM set up large-capacity tents to house COVID-19 patients.

46.     Defendants' handling of the COVID-19 pandemic was woefully inadequate: they knew of the substantial risks posed to vulnerable inmates and knew the measures they could have adopted to prevent the further spread of COVID-19. Defendants' failure to adopt such corrective measures can then only be deemed as grossly reckless and or deliberately indifferent to the high risk of death of its most vulnerable inmates.

## MICHAEL BURGERS Contracts and Dies from COVID-19

47.     MICHAEL BURGERS was one such vulnerable inmate, who had no other choice but to rely on Defendants for protection against the COVID-19 virus.

48.     BURGERS was convicted in 1996, and had already served 24 years years of a 25-year to life sentence. BURGERS was eligible for parole.  On information and belief and given his model behavior as an inmate, it was reasonably foreseeable that BURGERS would have been released within the next year.

49.     In or around June 2019, BURGERS was 53-years old. He was previously diagnosed with hypertension, dyslipidemia, pulmonary hypertension, lupus, experienced a transient ischemic attack (stroke), gastroesophageal reflux disease (GERD), and Chronic Obstructive Pulmonary Disorder ("COPD"). His CDCR medical records reflect that he was a former heavy tobacco smoker, which left him particularly prone to respiratory illnesses. BURGERS required an oxygen machine as a result of his COPD for even the briefest periods of physical activity.

50.     Thus, on information and belief, Defendants and their agents knew or must have known that BURGERS had multiple high-risk factors for COVID-19, including, but not limited to, his advanced age, hypertension, lupus, and COPD.

51.     In or around June 24, 2020, Plaintiff reached out to the CDCR Ombudsman to request information regarding a compassionate release of BURGERS. She informed the CDCR officials that BURGERS was very ill and was in danger.

52.     By September 2020, BURGERS had not been released from CDCR custody, despite his high-risk factors and his imminent eligibility for parole.

-11-

COMPLAINT FOR DAMAGES

53.   On information and belief, Defendants had not properly protected BURGERS from the known, serious risks of COVID-19. Defendants did not isolate BERGERS, kept him exposed to other personnel, and did not adhere to COVID-19 safety protocol measures outlined by various public health officials.

54.   Due to Defendants' wrongful decisions, acts, and deliberate omissions described herein, BURGERS tested positive for COVID-19 on or around September 15, 2020.

55.   BURGERS experienced multiple acute and painful symptoms, including body aches and fever, as a result of his COVID-19 infection.  Despite knowing of BURGERS's underlying medical conditions and increased susceptibility, Defendants did not immediately hospitalize or, on information and belief, treat BURGERS.

56.   On September 19, 2020, BURGERS was transferred to San Joaquin General Hospital. He was admitted with acute hypoxemic respiratory failure.

57.   September 26, 2020, BURGERS passed away.

58.   Each Defendants' deliberate indifference to BURGERS's safety and serious medical needs, along with the safety and serious medical needs of all FOLSOM inmates and staff, and Defendants' other tortious, unconstitutional, and/or otherwise wrongful conduct caused BURGERS's death.

59.   At all relevant times and, alternatively, the actions and omissions of each Defendant were intentional, wanton, willful, conscious-shocking, reckless, callous, malicious, or deliberately indifferent to Plaintiff's and Decedent's rights, grossly negligent, and/or negligent.

60.   As a direct and proximate result of each Defendants' acts or omissions as set forth above, Plaintiff individually sustained the following injuries and damages including: the wrongful death of MICHAEL BURGERS; loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, and solace; emotional distress including grief, sorrow, anxiety, worry, anger, humiliation, and indignity; loss of enjoyment of life; and other legally cognizable special and general damages.

# CAUSES OF ACTION
## FIRST CAUSE OF ACTION
## BY PLAINTIFF
## FIRST, FOURTH, AND EIGHTH AMENDMENT VIOLATIONS (42 U.S.C. § 1983)
## (AGAINST DEFENDANTS DIAZ, ESTATE OF THARRATT, HILL, BROWN, AND DOES 1 THROUGH 20)

61.   Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

62.   By the acts and omissions described above, Defendants DIAZ, HILL, ESTATE OF THARRATT, BROWN, and DOES 1-20, acting under the color of state law in their individual capacities, deprived MICHAEL BURGERS of the rights, privileges, and immunities secured by the First, Eighth, and Fourteenth Amendments by subjecting him, or through their deliberate indifference allowing others to subject him, to inhumane conditions of confinement and obviously unsafe conditions that created and increased BURGERS's exposure to a serious communicable disease, causing him to contract COVID-19. Defendants DIAZ, HILL, ESTATE OF THARRATT, BROWN interfered with BURGERS's right to familial association by failing to timely notify his family of his COVID-19 infection and/or hospitalization, by depriving him of the ability to consult with his family regarding medical treatment or end of life considerations, and by causing his death.

63.   The listed Defendants knew that, due to aggravating factors including age, hypertension, dyslipidemia, pulmonary hypertension, lupus, experienced a transient ischemic attack (stroke), gastroesophageal reflux disease (GERD), and Chronic Obstructive Pulmonary Disorder ("COPD"), and history of smoking, BURGERS faced significant risk of serious harm from exposure to COVID-19. Defendants each further had actual knowledge of the grave danger to inmates, staff, and the community posed by a potential, and by the actual, COVID-19 outbreak at FOLSOM, and of the reasonable, necessary, and feasible care and public health mandates to prevent such an outbreak. Defendants further had a duty to provide

BURGERS humane, safe, and sanitary living conditions, including a duty to act to abate exposure to serious communicable diseases, including COVID-19.

64.     The listed Defendants ignored, delayed, and/or denied to BURGERS urgently needed measures and care necessary to maintain reasonably safe conditions for him during his incarceration, to avoid a disastrous COVID-19 outbreak and his exposure to it, and to address his safety and serious medical needs. As a result of the Defendants' deliberate indifference to both BURGERS's safety and medical needs, Plaintiffs suffered damages and deprivation of constitutional rights, as described herein.

65.      By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. § 1983, depriving Plaintiffs and Decedent of the following well-settled constitutional rights that are protected by the First, Eighth, and Fourteenth Amendments to the U.S. Constitution: the right to be free from deliberate indifference to BURGERS's safety and medical needs while in state custody as an inmate, as secured by the Eighth Amendment; and the right to be free from wrongful government interference with familial relationships and Plaintiff's and BURGERS's right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments.

66.     The listed Defendants are liable for their individual conduct and decisions, for their failures to intervene, prevent, or stop the constitutional violations by others when Defendants were in a position to so intervene when such violations were occurring, and for their supervisory failures that caused their subordinates to violate Plaintiff's and BURGERS's rights.

67.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff and BURGERS of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff (individually and on behalf of BURGERS) and others would be violated by their acts and/or omissions.

68.     As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiff sustained injuries and damages, as set forth above. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

69.     In committing the acts alleged above, the individually named Defendants and DOE Defendants acted maliciously, oppressively, and/or with reckless disregard for the rights and safety of Plaintiff,  BURGERS, and others, and by reason thereof, Plaintiff is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure section 377.20 et seq, and other state and federal law against the individual Defendants. Plaintiffs do not seek punitive damages against the STATE OF CALIFORNIA, CDCR, or FOLSOM.

70.     Plaintiffs are also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

## SECOND CAUSE OF ACTION
## SUPERVISORY LIABILITY (42 U.S.C. § 1983)
## (AGAINST DEFENDANTS DIAZ, THARRATT, HILL, BROWN, AND DOES 1 THROUGH 20)

71.     Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

72.     Plaintiffs allege, upon information and belief, the unconstitutional actions and/or omissions of the individually named Defendants and/or others acting on behalf of Defendants CDCR and FOLSOM were pursuant to the following customs, policies, practices, procedures and official decisions of CDCR and/or FOLSOM. Stated in the alternative, the following acts and/or omissions were made, directed, approved, encouraged, allowed, and/or ratified by listed policymaking officials for CDCR and/or FOLSOM:

   a.  To require, approve, allow, and/or encourage the transfer of inmates to and/or CDCR personnel within FOLSOM without proper testing, screening, distancing, masking, PPE, isolation or quarantine, or taking other appropriate precautions to prevent and limit the introduction and spread of COVID-19 at FOLSOM, with deliberate indifference to the rights and safety of inmates, staff, and others;

   b.  To fail to discipline, train, and or correct staff-compliance with PPE protocols, physical distancing recommendations, testing, and face coverings;

c.  To require, approve, allow, and/or encourage the transfer of CDCR personnel to San Quentin during the height of the COVID-19 outbreak at San Quentin to return to FOLSOM without proper testing, screening, distancing, masking, PPE, isolation or quarantine, or taking other appropriate precautions to prevent and limit the introduction and spread of COVID-19 at FOLSOM, with deliberate indifference to the rights and safety of inmates, staff, and others

d.  To refuse and/or fail to properly and adequately classify, isolate or quarantine, test, and/or monitor inmates who were transferred to FOLSOM, tested positive for COVID-19, were exposed or suspected of being exposed to COVID-19, or experienced symptoms consistent with COVID-19, with deliberate indifference to the rights and safety of inmates, staff, and others;

e.  To deny inmates and staff at FOLSOM access to appropriate PPE necessary to mitigate the risk of contracting COVID-19, with deliberate indifference to the rights and safety of inmates, staff, and others;

f.  To reject and fail to institute legally required policies and procedures to prevent the spread of airborne infections, including COVID-19, with deliberate indifference to the rights and safety of inmates, staff, and others;

g.  To refuse and fail to adequately screen FOLSOM employees for COVID-19 symptoms or other factors indicating a risk of infection before entering FOLSOM and other CDCR facilities, and to require staff to work multiple shifts, with overtime, in different areas and structures, without necessary PPE, with deliberate indifference to the rights and safety of inmates, staff, and others;

h.  To refuse and fail to acquire, and to reject repeated offers of, COVID-19 testing resources necessary to monitor and control the presence and spread of COVID-19 at FOLSOM, and to refuse to facilitate the safe transfer or release of inmates, with deliberate indifference to the rights and safety of inmates, staff, and others;

i.  To refuse and fail to institute, require, and enforce proper physical distancing and face-covering among staff and inmates to reduce the risk of COVID-19 exposure;

j.   To refuse and fail to reduce the prison population at FOLSOM as urgently recommended by public health officials and courts, including but not limited to failing to expedite the release of nonviolent offenders, medically vulnerable inmates, and those with short remaining incarceration terms, with deliberate indifference to the rights and safety of inmates, staff, and others;

k.   To refuse and fail to train inmates and prison staff about public health and proper precautions to protect themselves and prevent the spread of COVID-19 at FOLSOM, with deliberate indifference to the rights and safety of inmates, staff, and others;

l.   To require prison staff to work in unsafe conditions subjecting them to high risk of COVID-19 infection, including requiring certain staff to drive sick inmates known to be infected with COVID-19 to hospitals in close quarters in unsafe vehicles and without proper training, PPE, sanitization, or safety measures, with deliberate indifference to the rights and safety of inmates, staff, and others;

m.   To require prison staff to work in different locations from shift to shift at FOLSOM, thereby spreading COVID-19 to different parts of the prison, with deliberate indifference to the rights and safety of inmates, staff, and others;

n.   To refuse to follow the advice, Orders, and mandates of public health experts and authorities to prevent the spread of COVID-19 at FOLSOM; and

o.   To refuse and fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (m) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiffs, Decedent, and the public, and in the face of an obvious need for

73.   The above-described customs, policies, practices, procedures, and/or official decisions of CDCR and FOLSOM, instituted and overseen by each of the individually-named Defendants, were a moving force and/or a proximate cause of the deprivations of Plaintiff's and

BURGERS's constitutional rights, in violation of 42 U.S.C. § 1983, as set forth above in Count One.

74. The above-identified individual Defendants further failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline other individually named Defendants,

75. The unconstitutional actions, choices and/or conduct of the individually named Defendants, DOES 1-20, and other CDCR and FOLSOM personnel as described above, were approved, tolerated, and/or ratified by policy making officers for CDCR and FOLSOM, including, but not limited to, Defendants DIAZ, ESTATE OF THARRATT, HILL, BROWN , and DOES 1-20. Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the individually named Defendants and DOES 1-20, authorized policy makers within CDCR and/or FOLSOM, and that the individually named Defendants and DOES 1-20 have direct knowledge of the fact that BURGERS and similarly situated inmates at FOLSOM were subjected to highly unsafe conditions with risk of COVID-19 and denied necessary care for their serious medical needs with deliberate indifference to their rights and safety. Notwithstanding this knowledge, each Defendant named in this Count approved of such conduct and decisions by each other and by individuals under their supervision and oversight, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, which resulted in the death of BURGERS. By so doing, the Defendants named in this Count have shown affirmative agreement with the conduct of other Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of such individual Defendants, employees, and agents.

76. As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

77. Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of

Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

78.     As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, mental and emotional distress, severe physical injuries, medical expenses, attorney's fees, costs of suit, and other pecuniary losses not yet ascertained.

## THIRD CAUSE OF ACTION
## BY PLAINTFF
## VIOLATION OF AMERICANS WITH DISABILITY ACT (42 U.S.C. § 12101)
## (AGAINST DEFENDANTS STATE OF CALIFORNIA, CDCR, AND FOLSOM)

79.     Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

80.     BURGERS was a "qualified individual," with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. Sec. 12131 (2), under Section 504 of the Rehabilitation Act of 1973 (RH), 29 U.S.C. Section 794 and Cal. Civil Code Sec. 51, et seq., and qualified as an individual with a disability under California law.

81.     Defendants STATE OF CALIFORNIA, CDCR, AND FOLSOM and its jails and are a place of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. Sec. 12181 (2), under Section 794 of the Rehabilitation Act of 1973, and Cal. Civ. Code Sec.51, et seq., explicated by the regulations promulgated under each of these laws. On information and belief, Defendants herein receive federal assistance and funds.

82.     Under the ADA, Defendants STATE OF CALIFORNIA, CDCR, AND FOLSOM are mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with [disabilities] . . ." and to ensure "that the personal civil rights" of persons who are receiving services under its agencies are protected.

83. Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be "serious and pervasive social problems." 42 U.S.C. § 12101(a)(2).

84. Defendants STATE OF CALIFORNIA, CDCR, AND FOLSOM are mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. Sec.12182(a). Defendants receive federal financial assistance for their jails, and therefore must comply with the mandates of the Rehabilitation Act, Sec. 504, which specifies that "program or activity" means all of the operations of a department, agency special purpose district or other instrumentality of a State or of a local government.

85. Defendants STATE OF CALIFORNIA, CDCR, AND FOLSOM violated the ADA and RH and Cal. Civ. Code Sec.51 et seq., and deprived BURGERS of his federally and state protected rights by: failing to make reasonable accommodations for BURGERS's disabilities, failing to provide access to medical and other appropriate services to Biesel, and placing BURGERS in a more acute risk for contracting COVID-19 and for experiencing more severe symptoms of that deadly virus than non-disabled inmates.

86. Defendants STATE OF CALIFORNIA, CDCR, AND FOLSOM acted as described in this Complaint despite knowing, at all relevant times, that BURGERS was a qualified individual under the ADA and RA with disabilities that greatly aggravated the risk of serious injury and death if he contracted the COVID-19 virus.

87. Further, all of Defendants' actions, choices, and decisions were policies or procedures, or a product thereof, instituted by Defendants STATE OF CALIFORNIA, CDCR, and FOLSOM that had a disparate impact on BURGERS due to his disabilities, in violation of his rights under the ADA and RA.

88. Thus, due to Defendants' failure to reasonably accommodate BURGERS's disabilities, and Defendants' conduct and decisions that had a disparate impact on him and other similarly disabled individuals, causing Mr. BURGERS to suffer greater injury and indignity than other

COMPLAINT FOR DAMAGES

non-disabled inmates, Defendants effectively treated non-disabled inmates more favorably than individuals with Mr. BURGERS's disabilities and high susceptibility to COVID-19.

89.  As a direct and legal result of Defendants' accts and commissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Plaintiff is not seeking punitive damages against Defendants Defendants STATE OF CALIFORNIA, CDCR, and FOLSOM.

## FOURTH CAUSE OF ACTION
## BY PLAINTIFF
## VIOLATION OF BANE ACT (CAL. CIV. CODE § 52.1)
### (AGAINST DIAZ, ESTATE OF THARRATT, HILL, BROWN AND DOES 1 THROUGH 20)

90.  Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

91.  By their acts, omissions, customs, and policies, Defendants DIAZ, THARRATT, HILL, BROWN, and DOES 1-20, acting in concert/conspiracy, as described above, and with threat, intimidation, coercion, and/or with reckless disregard for their rights, violated Plaintiffs' and Decedent's rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution and law:

a.  Decedent's right to be free from deliberate indifference to his safety and serious medical needs while in custody as an inmate, as secured by the Eighth Amendment to the United States Constitution and the California Constitution, Article 1, Section 17;

b.  Decedent's and Plaintiffs' right to be free from wrongful government interference with familial relationships and their right to companionship, society, and support of each other, as secured by the First and Fourteenth Amendments to the United States Constitution;

c.  The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1.

COMPLAINT FOR DAMAGES

92. Defendants' violations of Plaintiffs' and Decedent's rights with deliberate indifference in and of themselves constitute violations of the Bane Act. Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' and Decedent's rights, Defendants violated Plaintiffs' and Decedent's rights by the following conduct, among other conduct, constituting threat, intimidation, or coercion:

93. Intentionally and with deliberate indifference, choosing to place BURGERS at a highly increased risk of contracting a deadly communicable disease while he, as an inmate, was powerless to freely act to protect himself and mitigate that risk;

94. Intentionally and with deliberate indifference, violating Cal. Pen. Code § 5022 by failing to contact, or allow others to contact, Plaintiff thereby depriving BURGERS and Plaintiff of their rights to familial association protected by the First and Fourteenth Amendments of the United States Constitution;

95. Intentionally and with deliberate indifference, doing and/or permitting subparagraphs (a) – (b) when it was also obvious that in doing so, Decedent's life was likely to end needlessly, and/or that Plaintiffs' rights as Decedent's family also would be violated.

96. Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

97. As a direct and legal result of Defendants' accts and commissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

## FIFTH CAUSE OF ACTION

## BY PLAINTIFF

## VIOLATION OF UNRUH ACT (CAL. CIV. CODE § 51)

## (AGAINST DIAZ, ESTATE of THARRATT, HILL, BROWN, AND DOES 1 THROUGH 20)

98.   Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

99.   Plaintiff is informed and believe that the acts committed by Defendants against BURGERS, a disabled man, were motivated by his actual and/or perceived disability. CDCR had previously supervised BURGERS' medical care for the past twenty-four years. Therefore, Defendants wrongfully deprived Plaintiff and BURGERS of his right to be free from any violence, intimidation by threat of violence, committed against his person because of his actual and/or perceived disability in violation of Cal. Civ. Code § 51.7.

100.  As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

101.  Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

102.  As a direct and legal result of Defendants' acts and commissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

## SIXTH CAUSE OF ACTION
## BY PLAINTIFF
## NEGLIGENCE
## (AGAINST DIAZ, ESTATE OF THARRATT, HILL, BROWN, AND DOES 1 THROUGH 20)

103.  Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

104.  At all material times, Defendants DIAZ, ESTATE OF THARRATT, HILL, BROWN, and DOES 1-20 owed BURGERS the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

105.  At all material times, each Defendant owed BURGERS the duty to act with reasonable care.

106.  These general duties of reasonable care and due care owed to DANIEL RUIZ by all Defendants include, but are not limited, to the following specific obligations:

   a.  To maintain humane living conditions for, and provide for the safety and serious medical needs of, BURGERS, as a state inmate, including taking proper and adequate measures to abate the substantial risk of serious harm posed by exposure to a serious communicable disease; a)

   b.  To comply with Cal. Pen. Code § 5022, which requires that prison officials obtain and annually update a list of contacts from each inmate, and that prison officials take all reasonable means to contact individuals on an inmate's contact list in the event that inmate becomes seriously ill;

   c.  To refrain from abusing their authority granted to them by law; and,

   d.  To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

107.  As a direct and legal result of Defendants' acts and commissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF GOVERNMENT CODE § 845.6

## (AGAINST DIAZ, ESTATE OF THARRATT, HILL, BROWN, AND DOES 1 THROUGH 20)

108.  Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

-24-

109.   By virtue of the foregoing, Defendants knew or had reason to know that BURGERS needed immediate medical care and additional medical attention upon his transfer to FOLSOM. Defendants on notice that he needed additional care, treatment, and pain medication. The failure to provide immediate medical care exacerbated Plaintiff's injuries.

110.   As a direct and legal result of Defendants' acts and commissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

## EIGHTH CAUSE OF ACTION
## BY PLAINTIFF
## WRONGFUL DEATH
## (AGAINST DIAZ, ESTATE OF THARRATT, HILL, BROWN, AND DOES 1 THROUGH 20)

111.   Plaintiff incorporates by reference all the foregoing paragraphs of this Complaint as though fully set forth herein.

112.   As the heir of BURGERS, Plaintiff asserts a wrongful death claim against Defendants pursuant to section 377.60 *et seq.* of the California Code of Civil Procedure. This claim is based upon the fact that the negligent, reckless and wrongful acts and omissions of Defendants, as alleged herein, were a direct and legal cause of the death of BURGERS and the resulting damages to Plaintiff.

113.   Plaintiff is informed and believes and thereon alleges that these acts of Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the awarding of punitive and exemplary damages against the non-governmental entity Defendants, in an amount to be determined at the time of trial.

114.   As a direct and legal result of the acts and omissions of Defendants, and each of them, Plaintiff has suffered damages, including, without limitation, loss of earnings and earnings capacity, loss of enjoyment of life, pain and suffering, emotional distress, medical expenses,

funeral expenses, attorneys' fees, costs of suit, other pecuniary losses not yet ascertained and
the loss of love, affection, society, and companionship of BURGERS.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks judgment against Defendants and DOES 1
through 20, each of them, in an amount according to proof, as follows:

1.    For General Damages according to proof;

2.    For Special Damages according to proof;

3.    For Punitive Damages as provided by law against each individual
Defendant;

4.    For Attorneys' Fees and costs of suit;

5.    For post-judgment interest; and

6.    For any other relief that is just and proper.


DATED: May 10, 2022              **EMPLOYEE JUSTICE LEGAL
GROUP, P.C.**

By: _____
     Kaveh S. Elihu, Esq.
     Colleen M. Mullen, Esq.
     Attorneys for Plaintiff

COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims as provided by federal law.

DATED: May 10, 2022                    **EMPLOYEE JUSTICE LEGAL GROUP, P.C.**

By: _____
     Kaveh S.  Elihu, Esq.
     Colleen M. Mullen, Esq.
     Attorneys for Plaintiff